UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JENNIFER INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-cv-357-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Motion to Dismiss filed by the United States of America. [R. 10]. Plaintiff Jennifer Ingram filed a response in opposition, [R. 11], and the United States replied. [R. 12]. This matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant the Motion to Dismiss.

## I.    BACKGROUND

In her complaint, Plaintiff alleges that, on or about June 25, 2023, she was camping at Kendall Campground, which is located in Jamestown, Kentucky and is operated by the Department of the Army, Corps of Engineers. [R. 1, ¶¶ 7, 13]. She alleges that, on that date, "a storm blew in at approximately 11 p.m." *Id.* ¶ 13. She further alleges that, "[a]s she was exiting her tent to go to the storm shelter, a branch from a nearby dead tree fell from above and impaled her leg." *Id.* ¶ 14. The branch allegedly "caused a 5.3 inch long laceration across her upper-inner thigh," and as a result, she was transported via ambulance to a nearby hospital. *Id.* ¶ 15.[1]

On September 8, 2025, Plaintiff filed the present lawsuit against the United States under

---

[1] These same facts are alleged in Plaintiff's amended complaint. [R. 11-1, ¶¶ 8, 15–17].

the Federal Tort Claims Act ("FTCA"). [R. 1]. She asserts a claim for negligence (Count I), arguing that the United States "had a duty to provide reasonable care and was required to exercise and use in the maintenance of its premises in (sic) the degree of care, skill, and learning ordinarily used under the same or similar circumstances by campgrounds open to the public," the United States breached that duty, and Plaintiff was injured as a result. *Id.* ¶¶ 16–22. She also asserts a "vicarious liability, respondeat superior, ostensible agency and/or agency" claim (Count II). *Id.* ¶¶ 23–29. Plaintiff seeks compensatory damages in the amount of $80,000. *Id.* at 6.[2]

The United States now seeks dismissal of Plaintiff's complaint. [R. 10]. The United States argues that this Court lacks subject matter jurisdiction because Plaintiff's claims are subject to the FTCA's discretionary-function exception. *See, e.g.*, *id.* at 1. Plaintiff filed a response, [R. 11], and the United States replied. [R. 12]. This matter is therefore fully briefed and ripe for review.

## II. LEGAL STANDARD

In its motion, the United States argues that Plaintiff's claims fail because the FTCA does not waive sovereign immunity for acts falling within its discretionary-function exception. *See* [R. 10]. Stated another way, the crux of the United States argument is that Plaintiff's claims are barred by sovereign immunity. Importantly, "'[a] motion to dismiss on the basis that [a] plaintiff's claim is barred by sovereign immunity is a motion to dismiss for lack of subject matter jurisdiction.'" *B.A. v. United States*, No. 5:21-cv-106-DCR, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (quoting *Sawyers v. United States*, No. 3:15-cv-873-GNS-DW, 2016 WL 7223430, at *1 (W.D. Ky. Dec. 12, 2016)). The Court therefore understands that the United States seeks dismissal under Federal Rule of Civil Procedure 12(b)(1).

When bringing a Rule 12(b)(1) motion to dismiss, the moving party may either attack the

---

[2] These same claims are asserted in Plaintiff's amended complaint. [R. 11-1, ¶¶ 19–34].

claim of jurisdiction on its face, or it can attack the factual basis of jurisdiction. *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack "questions merely the sufficiency of the pleading." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A factual attack, on the other hand, "challenges the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  In this case, the United States states in its motion that it is asserting a facial attack on jurisdiction. [R. 10, p. 3 ("This motion is brought as a facial attack.")]; *see also L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) (clarifying that the United States can bring either a facial or factual attack when challenging jurisdiction under the FTCA).

The Court, when addressing facial attacks, applies Rule 12(b)(6)'s standard. *Ferren v. United States*, 2:19-CV-00065-JRG-CRW, 2020 WL 13556137, at *1 (E.D. Tenn. June 8, 2020) (citing *Carrier Corp. v. Outokumpo Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)); *see also Am. Reliable Ins. Co. v. United States*, 106 F.4th 498, 504 (6th Cir. 2024) ("In a facial challenge, the material allegations in the pleadings are accepted as true and must be construed in the light most favorable to the nonmoving party."). Under Rule 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Importantly, when faced with a Rule 12(b)(1) challenge, the plaintiff bears the burden of establishing subject-matter jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### III.    ANALYSIS

While the United States cannot be sued unless it has waived sovereign immunity, the FTCA constitutes a limited waiver of the United States' sovereign immunity "and allows tort claims 'in the same manner and to the same extent as a private individual under like circumstances.'" *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (quoting 28 U.S.C. § 2674); *see also L.C.*, 83 F.4th at 541. However, there exist numerous statutory exceptions to this limited waiver of sovereign immunity. *L.C.*, 83 F.4th at 542 (citations omitted). These exceptions can be found in 28 U.S.C. § 2680. *See id.* If any such exception applies, "the United States cannot be sued for tort liability and federal courts lack subject-matter jurisdiction over the action." *Id.* (citations omitted).

In the present case, the parties dispute the applicability of the discretionary-function exception. This exception exempts the United States from liability for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception has been described as "broad in scope" and as placing a "'significant limitation on' the FTCA waiver." *Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (quoting *Montez . United States*, 359 F.3d 392, 395 (6th Cir. 2004)).

To determine if the discretionary-function exception applies, thereby barring an FTCA claim, courts apply a two-part test. *See L.C.*, 83 F.4th at 543. First, "the challenged government action must have been discretionary; it must 'involv[e] an element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Next, if such discretionary judgment exists, the Court must ask "'whether that judgment is of the kind that the discretionary function

exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322–23). If both prongs are resolved in the United States' favor, "and there is no other waiver of the government's sovereign immunity, then the court lacks subject matter jurisdiction over the plaintiff's FTCA claims." *Hatcher v. United States*, 855 F. Supp. 2d 728, 732 (E.D. Tenn. 2012), *aff'd* 512 F. App'x 527 (6th Cir. 2013) (citation omitted); *see also Am. Reliable Ins. Co.*, 106 F.4th at 505.

Regarding the first prong, "[t]he requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive." *L.C.*, 83 F.4th at 543 (quoting *Milligan v. United States*, 670 F.3d 686, 693 (6th Cir. 2012)) (internal quotation marks omitted). In other words, "[g]overnment actions are not discretionary when 'they [are] . . . controlled by mandatory statutes or regulations,'" or policies. *Id.* (quoting *Gaubert*, 499 U.S. at 328). Thus, "the Court's initial task under the [two-prong] test is to decide whether the conduct at issue[3] involved an act that required the exercise of judgment or choice, or instead, whether it involved an act that was mandatory under a statute, regulation, or policy." *Ferren*, 2020 WL 13556137, at *2 (citation omitted). Importantly, the burden is on the plaintiff to "plead sufficient facts showing that the [defendant's] alleged conduct involved an act that was mandatory under a statute, regulation, or policy." *Id.* at *3; *see also Bannister v. Pearce*, 22-91-DLB-EBA, 2025 WL 394949, at *7 (E.D. Ky. Feb. 4, 2025) (noting that the plaintiff's failure to point to a federal statute, regulation, or policy specifically prescribing the relevant courts of action "is fatal" to that FTCA claim); *Hatcher*, 855 F. Supp. 2d at 731 ("The burden is on [the] plaintiff to plead sufficiently to demonstrate that the discretionary function exception does not apply.").

In the present case, the United States argues that dismissal is appropriate because Plaintiff

---

[3] The parties appear to agree that the relevant conduct at issue here is the inspection and removal of hazardous trees.

"does not allege that the United States failed to comply with any specific federal statute, regulation, or policy that contains a mandatory directive." [R. 10, pp. 6–7]. In response, Plaintiff does not deny this charge, nor does she dispute that her complaint, [R. 1], fails to establish subject matter jurisdiction. *See* [R. 11]. Instead, she asks the Court for leave to amend her complaint. [R. 11, p. 1]. However, under Rule 15(a)(1), Plaintiff is entitled to amend her pleadings "once as a matter of course" no later than twenty-one days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). As such, the Court accepts her amended complaint.

The amended complaint, [R. 11-1], is now the operative pleading. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Under such circumstances, the Court can dismiss the Motion to Dismiss as moot and allow the United States to respond to the amended complaint, either by answer or another Rule 12(b) motion. *See ComputerEase Software, Inc. v. Hemisphere Corp.*, No. 06–CV–247, 2007 WL 852103, *1 (S.D. Ohio Mar. 19, 2007) ("Since the amended complaint replaces the original complaint, the motion to dismiss the original complaint is moot . . . ."); *Wright v. Memphis Light, Gas & Water Div.*, No. 11–3071–STA–TMP, 2012 WL 3683484, at *1 (W.D. Tenn. Aug. 24, 2012); *Ky. Press Ass'n, Inc. v. Ky.*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005).

In this case, however, Plaintiff's response to the Motion to Dismiss relies on the allegations in her amended complaint; that is, her response argues that her *amended* complaint survives the United States' Motion to Dismiss. *See* [R. 11]. And the United States' reply brief addresses the allegations in the amended complaint and argues that, even with these additional allegations, Plaintiff has still failed to plead facts showing that the discretionary function exception does not apply. *See* [R. 12]. Given that the parties have addressed the amended complaint in their briefing, the Court finds it appropriate to consider the Motion to Dismiss in the context of the amended

- 6 -

complaint.

The amended complaint adds the following allegations. First, Plaintiff adds an allegation that "[t]he claims herein do not fall under the discretionary function exception of the Federal Tort Claims Act." [R. 11-1, ¶ 3]. Such conclusory statements, without more, are insufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Next, Plaintiff alleges that the individuals "employed by and/or acting on behalf of Kendall Campground had a duty to inspect for and remove hazardous trees, including those at campgrounds, that could pose a threat to persons and property," citing National Park Service Natural Resources Management Guideline 77 ("NPS-77"), which is attached as an exhibit. [R. 11-1, ¶ 12]; [R. 11-2 (NPS-77, Exhibit A to Amended Complaint)]. She further alleges that NPS-77 "requires federal parks to look for hazardous trees to prevent damage to persons and property," [R. 11-1, ¶¶ 18, 30], and "[t]he Defendant had a duty under [NPS-77] to look for hazard trees to prevent damage to persons and property." *Id.* ¶ 21.

In her response, Plaintiff provides further information and argument regarding NPS-77. She asserts that NPS-77 requires each NPS park to implement its own program to "'reasonably protect visitors from unnecessary risks resulting from hazardous trees,'" presumably quoting from NPS-77. [R. 11, p. 3]. Plaintiff contends that these park programs "'provide[] a systematic method for mitigating tree hazards to avert damage to people or property,'" again presumably quoting from NPS-77. *Id.*  But, she argues, she "is not in possession of Kendall Campground's specific mandate, so [she is] unable to further examine it for its systematic method, much less determine if it was followed." *Id.* Thus, she argues, "discovery should be allowed on this 'systematic method' so that

the Court can properly determine whether there are discretionary or ministerial actions on behalf of the United States." *Id.* at 4.

The best the Court can tell, Plaintiff acknowledges that NPS-77 is not a mandatory policy or directive requiring the inspection or removal of hazardous trees, but instead it directs NPS parks to create hazardous tree plans that, in turn, could contain such mandatory policies or directives. *See* [R. 11-2 ("The purpose of this section is to outline a hazardous tree program (HTP) that provides the foundation for each park to implement its own hazardous tree management plan (HTMP), and also to provide a general scheme for such plans.")]. As a result, she requests limited jurisdictional discovery to determine what mandatory policies or directives the Kendall Campground implemented in response to NPS-77.

As the United States points out in its reply brief, however, Plaintiff was not injured at an NPS site. *See* [R. 12, p. 2]. Indeed, in her amended complaint, she alleges that the Kendall Campground is operated by the Department of the Army, Corp of Engineers. [R. 11-1, ¶ 8]. There are no allegations suggesting that the Kendall Campground is in any way part of the National Park Service or is in any way subject to it policies and procedures.

Moreover, even if NPS-77 applied in this case, the very language of that policy reveals the discretionary nature of the hazardous tree programs. For instance, NPS-77 outlines the program objectives and explains,

> The inherent decision-making challenge in addressing hazardous trees is to preserve and sustain healthy trees as components of the park's natural systems, while treating or removing trees with discernible defects which represent risks to the public or property. The attitude when inspecting a tree must be: Can this tree be reasonably retained as a vital component of the natural system? If not, should the tree be removed? The action to be taken should result from an evaluation of the tree as a functional and aesthetic component of the landscape, in addition to its potential hazard.

[R. 11-2, p. 2]. NPS-77 goes on to discuss the "decision-making process" and what factors to consider when determining the appropriate remedial action, including the potential benefits to wildlife and the extra manpower and time commitment involved. *Id.* at 4. Because this policy contemplates a park program that leaves "discretion to the government agents executing it," and "because the overall framework of [the NPS-77 guidance] is clear that safety measures are to be balanced against various other factors," like the function and aesthetic qualities of the trees and the manpower involved, among other things, "the decision on how to execute the plan was discretionary." *Hatcher*, 855 F. Supp. 2d at 732.

The Court therefore concludes that Plaintiff has failed to "plead sufficient facts showing that the [defendant's] alleged conduct involved an act that was mandatory under a statute, regulation, or policy." *Ferren*, 2020 WL 13556137, at *3; *see also Hatcher*, 855 F. Supp. 2d at 731 ("The burden is on [the] plaintiff to plead sufficiently to demonstrate that the discretionary function exception does not apply."). The failure to identify an appropriate federal statute, regulation, or policy is fatal to Plaintiff's FTCA claims. *See Bannister v. Pearce*, 2025 WL 394949, at *7.

For the same reasons, Plaintiff has failed to support her request for jurisdictional discovery. As the Sixth Circuit has explained, "plaintiffs must do more than 'merely assert' the need or [jurisdictional] discovery; they must 'explain what evidence relevant to subject matter jurisdiction they [would be] denied from obtaining.'" *C.H. By and Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quoting *Gilbert v. Ferry*, 401 F. 3d 411, 415 (6th Cir. 2005)). Stated another way, "[a] plaintiff is not entitled to discovery if she cannot, at a minimum, 'offer any factual basis for [her] allegations' and give the district court 'a reasonable basis to expect that . . . discovery would reveal' evidence that supports the claimed jurisdiction." *Id.* (citations

- 9 -

omitted). Here, Plaintiff points only to NPS-77's directive to NPS parks to create hazardous tree management programs; she does not provide any other factual basis for her position. But as already explained, the Kendall Campground where Plaintiff was injured is not an NPS park, and moreover, the hazardous tree programs governed by NPS-77 are clearly discretionary in nature, as already discussed. Plaintiff has therefore failed to state "'a reasonable basis to expect that . . . discovery would reveal' evidence that supports the claimed jurisdiction." *Id.* Her request for jurisdictional discovery will therefore be denied.

Here, for all the reasons just stated, Plaintiff has failed to plead facts demonstrating that the "alleged conduct involved an act that was mandatory under a statute, regulation, or policy." *Ferren*, 2020 WL 13556137, at \*3. That is, she has failed to sufficiently allege that the conduct at issue was *not* discretionary. And where such discretionary judgment exists, the Court must turn to the second prong of the test and ask "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *L.C.*, 83 F.4th at 543 (quoting *Gaubert*, 499 U.S. at 322–23). However, where the first prong is met, "there arises a 'strong presumption' that the second condition is met as well." *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 159 (6th Cir. 2018) (quoting *Gaubert*, 499 U.S. at 324); *see also Am. Reliable Ins. Co.*, 106 F.4th at 505. Still, the conduct at issue must satisfy both prongs for the discretionary-function exception to apply. *See Am. Reliable Ins. Co.*, 106 F.4th at 505 ("If the conduct in question satisfies the first part of the test, then there is a strong presumption that the second part is satisfied, but the conduct must satisfy both parts for the discretionary-function exception to apply." (citation omitted)).

The Court therefore turns to the second prong. This prong requires the Court to consider whether the use of discretion is 'the kind that the discretionary function exception was designed to shield,' meaning the use of discretion must be 'susceptible to policy analysis.'" *Id.* Simply

- 10 -

stated, "'where there is room for policy judgment and decision, there is discretion of the sort protected by'" the discretionary-function exception. *Id.* (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)).

Other courts within this circuit have considered this prong in similar contexts, that is, in other "inspection and maintenance case[s] involving a tree falling and injuring a plaintiff in a federal park." *Hatcher*, 855 F. Supp. 2d at 732. Those and other courts have consistently held that the "hazardous tree inspection and removal procedure, and the decisions on how to comply with those inspections and procedures, are clearly within the scope of the discretionary function exception." *Id.* (quoting *Wright v. United States*, 868 F. Supp. 930, 936 (E.D. Tenn. 1994)) (internal quotation marks omitted). As those courts have explained, the decision as to which method the park employees should utilize to inspect and remedy potentially hazardous trees likely involves weighing the risk of harm, the desire to preserve the natural state of the forest land, and the availability of resources, among other things. *Id.* (discussing *Wright* and *Autery v. United States*, 992 F.2d 1523 (11th Cir. 1993)). "[S]uch inspection and maintenance decisions are of the type Congress intended to protect though the discretionary function exception to the FTCA." *Id.*; *see also Hatcher*, 512 F. App'x at 530 ("Decisions on whether and how to make federal lands safe for visitors require making policy judgments protected by the discretionary function exception. Indeed, tree inspection and removal is the sort of conduct inherently subject to important and unpredictable constraints like limited funds and manpower." (citations omitted)). Accordingly, the Court finds that this second prong is satisfied.

Because both prongs of the discretionary-function exception are satisfied, the exception applies, the United States retains its sovereign immunity in this case, and the Court lacks subject matter jurisdiction.

## IV.    CONCLUSION

For the reasons set forth above, the Court will grant the Motion to Dismiss, [R. 10].

Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.  The United States of America's Motion to Dismiss, [**R. 10**], is **GRANTED**.

2.  This matter is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

3.  A separate judgment shall follow.

This the 27th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY